We'll get started with case number 23-50370, which is listed as Sealed Appellee v. Sealed Appellant. And we'll begin with Carl Henneas. I'm sorry, you can pronounce it for me. Henneas, Your Honor. Henneas? Okay. Thank you, Judge Haynes. Good morning, and may it please the Court. They say that no good deed goes unpunished. And that is certainly true for my client in this case. After completing a series of small drug sales to a confidential informant, my client's house was searched, and she was interviewed by law enforcement. At that time, she had a powerful motive for wanting to not go to jail. She was scheduled to see her estranged grandkids just the next day. So she immediately offered to cooperate with law enforcement and to turn in her supplier. There is no question that in that moment, in an effort to inflate her value as a cooperating witness, she exaggerated her ability to obtain drugs from the supplier. But she soon recanted under oath, and no evidence supports the idea that she had obtained more than half a million dollars of drugs over three years. My client's cooperation paid off for the government. Her supplier was arrested the very next day, ultimately convicted, and she received a 15-month sentence, which she has now completed. My client, however, was harshly punished for her cooperation. She received 135 months in prison, which is almost ten times— That's what I don't understand. As you know, we've read the material, so we're aware of what you're arguing and understand that. But in her comments to the judge, your client said that she exaggerated a little bit or quite a bit. Is there anywhere in the record that shows more of a discussion of exactly how much she exaggerated? I don't think there is. Okay, a little bit would still be within the range. Quite a bit, maybe not. But that doesn't tell the judge, Squat, about exactly how much drugs she was buying and selling, because it's not just the little bit that the police officer saw. So can you explain that, how the judge would know how much she actually sold if she didn't say? So I have to go kind of back to first principles here, is that it's the government's burden to put on evidence of relevant conduct. They have to prove the relevant conduct by a preponderance of the evidence. Well, they have the evidence of what she said to them that she now says is a lie. But the lie, she said, was a little bit or quite a bit. She didn't make it any clearer. So you know, you can say two different things in life, and only one of them is a lie, and the judge has to figure out which one. So the judge could find that the later statement was a lie, or a little bit doesn't change anything. Can you explain that? I mean, I think on the record, as the government, you know, built it, it's their burden to prove relevant conduct. And they were all in on this 22 kilograms, which the district court, you know, classified that as a very conservative estimate, which obviously we don't agree for. That takes into account 20 grams per day for three years, 365 days a year. So it's not conservative. But the government went all in on this estimate of 22 kilos. They didn't introduce any other evidence. So the record, as it stands right now, I mean, my client debriefed with the government. She was, you know, she told them what was going on, but they didn't introduce that evidence at sentencing. And it's their burden to prove relevant conduct. And they just, I mean, besides, you know, the implausible 22 kilograms that, you know, based on her soon recanted statement, which was under oath and, you know, driven by a powerful motive to stay out of jail so she could see her grandkids the next day, the government didn't prove any other evidence of what her relevant conduct would be. What we're left with. So what case says that the judge could not believe her original statement, given that her later statement just says a little bit or quite a bit? So I think, you know, this is whether the record as a whole, this finding that she had received 22 kilos, she was responsible for 22 kilos, is plausible. And it really just isn't here. I mean, it's not plausible based on the fact that she soon recanted under oath. She was under observation from the government for four months. They made these, you know, sales to the confidential informant over a series of four months. And none of the agents that testified said, you know, there was evidence during that four months that a large-scale drug operation was going on at her house. When they searched her house, they didn't find any evidence of a large-scale drug operation. They found no drugs, only some residue, and the only cash they found was the cash that the confidential informant had paid for the drugs with. And then finally, you know, when you look at the PSR's facts about her life in general, she is, she's poor, you know, she is in collections on her cell phone bill, her car insurance bill, she's in poor health, she's 53 years old. I think as the record as a whole, backs up her idea that she was not responsible for this huge amount of drugs that the government pinned on her. And I think the fact that, you know, the supplier, apparently, we don't have the PSR from the supplier's case, but either the government didn't introduce that as relevant conduct, or the judge in that case drastically, you know, found that it wasn't reliable, but the supplier got 15 months. So we're in this weird case where, you know, for some reason, the government is going very, you know, hard at its, somebody who is cooperating with it. But the person she turns in gets a much more lenient sentence, and that kind of gets things exactly backwards. We want to incentivize cooperating with the government. We want to incentivize people that can turn in a higher level drug supplier. And that's exactly what my client did. She just exaggerated, again, to stay out of jail. I'd like to briefly address Barfield, which is kind of the crown jewel in the government's case. And I think Barfield confirms that the ultimate question is, is this plausible in light of the record as a whole? And there are a few things about Barfield that distinguish it from this case. In Barfield, the defendant did not offer to cooperate with the government, and certainly not immediately. So it seems like the court found his, you know, explanation to be kind of a made for sentencing explanation to try to get him off the hook for this relevant conduct. By contrast, my client did immediately offer to cooperate with the government. Barfield never explained his motivation, other than a vague sense that he, you know, thought he might be able to get off. And my client did. She was seeing her grandkids from her estranged son the next day. She had a powerful motive to want to exaggerate her conduct. It might be illogical in Barfield for him to try to exaggerate to stay out of jail, but there's nothing illogical about wanting to see your grandkids. Barfield never recanted under oath, at least from what we can tell from the opinion. And in Barfield, his car was searched, and they found more drugs and more money. So there was at least some evidence backing up a larger scale drug operation. And again, when my client's home was searched, they did not find any drugs. They did not find any additional money except for the buy money. So compared to Barfield, you know, we have a much more believable story and a complete lack of evidence that the original statement was true. I'd like to go briefly to the safety valve issue. And quite frankly, the government's case is based on speculation on this issue. The government claimed that she kept selling after her initial interview with police, but that was based on just almost no facts, except they saw some cars coming and going. And I think it's really important to look at exactly what the government agent testified to, and it's on page 116 of the record. And he said, the government learned there was still crack cocaine being sold from the residence she was involved with. The agent could not even say that it was her that was doing the actual selling. And in her debrief with the government, she said, there was another individual that was selling from this residence, and I believe it was her nephew. And the government never looked into that individual. And the government agent admitted he did not know who all was living in the residence at that time. So this idea that she kept selling after she was already cooperating with the government, which already doesn't make much sense, is just pure speculation. It's not based on enough facts to warrant the safety valve. And I will say that the safety valve might seem a little small potatoes here. It's only a two-point decrease in her offense. You mean warrant not the safety valve. Or not, well, yeah. But two points at her place in the guidelines, it's worth more than two years in jail. So this is a significant increase. I'm well aware every day in jail is big. No, absolutely. And so, again, the safety valve also is meant to encourage cooperation and encourage people helping the government, and she did all of that. She led to the conviction of a higher level drug supplier. So it just makes no sense why the government kept piling on its sentencing and apparently did not do the same for the supplier. And finally, I just briefly want to touch on the substantive unreasonableness of her sentence. It's greater than necessary to effectuate the sentencing factors in 3553A. Again, we want to incentivize cooperation. If she had stayed silent, exercised her Fifth Amendment rights during her first encounter with law enforcement, she would be looking at a guidelines range of 12 to 16 months. So it really is her cooperation that drove the entire train here up to 135 months. This led to an unwarranted disparity under 3553A6 between her and her supplier. There's no reason for a high level supplier to receive a lower sentence than someone she's supplying, much less a ten times lower sentence. Even the government at sentencing said that a lower sentence was required, that 135 months was greater than necessary. The relevant conduct, at the very least, was debatable here. And I think when you have a debatable relevant conduct that the government probably could not have proven by beyond a reasonable doubt, it's really a tail wagging the dog situation. And so that should come into account in whether the sentence is substantively reasonable. And finally, nothing else in the record warrants a 135 year sentence. She's 53 years old, she's had four heart attacks, she has serious health problems. She's had more health problems while she's been incarcerated, I can represent to the court. She's non-violent, so all these things considered, her sentence is substantively unreasonable. So if there are no questions, we would ask the court to vacate my client's sentence and remand pre-sentencing. Thank you. Thank you. We'll hear from Lauren Bradley. Thank you, Your Honor. May it please the court. Lauren Tanner Bradley for the United States. I'd like to push back on some of what was said in argument and also address some of what you asked, Judge Haynes. When you talk about the defendant having said that she exaggerated a little bit, that she exaggerated quite a bit. Here, on the record, to trigger that base offense level, you only have to reach 8.4 kilograms. That's substantially less than the 21.9 kilograms that her own statements implicate her for drug trafficking. You get to 8.4 kilograms after 420 days of drug trafficking at 20 grams a day. Well, your opponent's argument is she didn't have to say more than that. She didn't have to do more than withdraw what she had originally said. What's your response to that? It was absolutely her burden to rebut her own admissions, and she did not carry that burden here. And this is a situation where this court has said before that uncorroborated admissions by a defendant can be used to drive relevant conduct. Here, these are corroborated admissions. There's substantial evidence in the record corroborating these statements. The very next day, she conducted a controlled buy with the supplier for the exact amount that she stated to officers that she was getting. She made it important, she told the officers it was very important that she not ask for more than she normally gets. That quantity was fronted to her, showing a trusted business relationship between these two individuals. Also, that's all at 135 through 136 of the record. Also, there are the five controlled buys. The defense characterizing this is taking place over four months. It was a 75 day period. The first buy took place on June 27th. The last buy was on September 28th. The last four buys took place every two weeks. And each of those were for, the last four buys were for 1.8 to 2.2 grams. If you think about that, that means that over 20 grams a day, that's 10 to 12 customers a day. There's nothing implausible about a drug dealer trafficking to 10 to 12 customers a day in these smaller increments. She also said in her debrief that she sold to the CI frequently. So she couldn't remember exactly when the controlled transactions had happened because she was frequently selling to this individual. That's at page 141 of the record. The officers also conducted surveillance. Their surveillance efforts showed traffic coming and going from the property, indicative of drug trafficking. That's at 116 and 132 of the record. But if she was selling that much, it was because of the person she was going to, and that person only got 15 months, right? So why isn't that a problem compared to the amount of time she got? These individuals were sentenced by different judges. We don't know anything other than the fact that this person received a 15 month sentence. There's really not any information in the record, and the information that was presented to the district court judge at sentencing was simply that she received a 15 month sentence. This is a defendant who is characterizing herself as a cooperator, and that was true to a point that initially she conducted a controlled transaction with a supplier. But after that fact, she stopped cooperating. She recanted her statements. She accused the government of having used the CI to set her up, to frame her, and then she went back to drug dealing. This is not an individual who's cooperating with the government, who's providing substantial assistance to the government. Once a cooperator recants statements, it becomes very difficult to use that cooperator further. And so she undermined her own credibility in this instance. And we really cannot know on this record what would have happened if she had continued to cooperate. And if she had continued to testify against that individual, your cooperation does not end at the controlled buy. It ends at the end of the prosecution of these other individuals. So I think it's really mischaracterizing herself to say that she was a cooperator. And I also want to go back to some of the statements that they made about how we want to incentivize cooperation. That's absolutely true. We do want to incentivize cooperation. But granting her some kind of reduction here for cooperating initially and then stepping back and backpedaling, that doesn't actually incentivize full cooperation with the government. I'd also like to talk about- Why didn't the judge follow y'all's request? You requested a lower number. So I, candidly, do not know what happened in those proceedings. I looked up the case number. There was only so much information I could ascertain. There's documents under seal. And I do not know what was driving that district court judge's- I don't even know what the quantity finding was in that situation. But again, I think one plausible inference is that we have statements suggesting that she had been involved in higher level quantities that had then been recanted by that individual. So I think it becomes a little bit difficult. I do not know, though, what happened in that sentencing court. And again, it was different judges, different circumstances. We don't know anything on this record. And I think just that fact alone, to go to the substantive reasonableness argument, the fact alone that a supplier was given a 15-month sentence is- You know, I'm talking about you all recommending a lower sentence for her. And again, I don't know what the recommendation was. I am certain that it was a regrettable situation. That the supplier- You know, obviously the government would prefer suppliers to get a higher sentence in this situation. But again, I don't think that the argument that her supplier received an unreasonable sentence actually speaks to whether her own sentence is reasonable under the circumstances. I'd like to talk about just quickly some of the facts that they presented to rebut her admissions, which they actually didn't put any evidence on to rebut that statement. But they did point to things in the PSR, the fact that her financial circumstances were what they were. But I'd point out that this individual was unemployed for at least three years. That's the PSR says that at 177. So it's very plausible that during that time she was drug trafficking. She also had high expenses from her serious substance abuse issues and health issues. And again, presumably she is paying for these expenses by drug trafficking. Also, the officers testified that this was a normal amount, conservative and not outlandish. That's a record 121 to 124. And something else that, Judge Haynes, you had pointed out is that there is no case finding that an offendant's admissions here are unreliable or insufficient to support a relevant conduct finding. Okay, maybe I haven't been asking this question in a way that you understand. At page 39 of the blue brief, it says the court denied the government's four-level variance request. To address the unjustified disparity, blah, blah, blah. So that would have taken down the guideline number and probably her sentence. And the government argued for that and the court didn't do it. So that's my question. Our motion for a variance was based on the guidelines treatment of crack cocaine versus cocaine. And so we moved for a variance that would assess the quantity of drugs. But take down the guidelines, right? Yes, but only based on the disparity in the guidelines between crack cocaine and cocaine offenses. And so what we did is we said, we asked the court to calculate her drug quantity based on the fact that, as if it had been cocaine. And the district court, within its discretion, declined to do that. But that was not at all an argument that she should be held responsible for a lower quantity of drugs that she was doing. No, no, and I wasn't saying that in my earlier question. It was a lower number. Yes. And that's what she, so she's saying, why not at least do that? And I'm asking that. Well, and again, I think that it was within the district court's discretion to make a determination about whether it felt that variance was necessary here and the district court declined to do so. I don't think that's clear error or, you know, an abuse of their discretion in this situation. I also want to point out just that about what has been said about the defendant's finances, things of that nature. I think this court is well aware that drug dealing does not necessarily guarantee you a life of luxury. It is not uncommon for us to have defendants who require public defenders, things of that nature, even though they're drug trafficking in significant quantities. This is an individual. We're not accusing her of having made kilo-level transactions on a day-to-day basis. This is an individual who is a street-level dealer. She was trafficking in small quantities on a daily basis over a very long period of time. Even small-level dealers put significant drug weight out on the street when they have been doing so for a very long time, and there is nothing unreasonable about holding that defendant responsible for her own conduct. She's not being held responsible for her cooperation. She is being held responsible for her own admitted conduct that she trafficked in drugs for approximately three years. I also wanted to talk about just the safety valve finding very quickly that, essentially, this is a situation where the district court credited those initial statements that she made. That alone supports the safety valve denial. This is an individual who made inconsistent statements after the fact, and that alone is sufficient to find her having not been truthful. The court actually credited those admissions at page 145 to 146 of the record. He said, I believe she had every incentive to tell the truth at the time she was arrested. And then this information about the drug dealing that continued. There's actually considerable evidence in the record about that continued drug dealing after the fact. The CI told officers that the defendant was still selling. That's at 129 and 132 of the record. The officers then corroborated that information by conducting surveillance at the house. They said it was the same business as usual. That's at 116. And like prior to the execution of the search warrant, there were multiple cars coming and going from the residence. That's at 132. Also, this information about the nephew. The officers said that they were not aware of the nephew beforehand. They did not see the nephew at the house. That's at 132 to 133. And any implications about the nephew were made when she was confronted with her own possible drug dealing at the house. If there are no further questions from the court, we would ask that you affirm the sentence. Thank you very much. All right. We'll have the rebuttal. Just briefly, this idea that my client had the burden to show that her statements were false is just simply not the case. The government had the burden to prove relevant conduct. And this court reviews the record as a whole to determine whether that finding was plausible. And here it is not. Her statement was uncorroborated. And for the corroboration, the government points to the fact that they did a controlled sale with her supplier the next day. That corroborates the fact that her supplier was her supplier, but we're not disputing that. Her supplier was her supplier. The dispute is over this fact that she had gotten 20 grams every single day for three years. And nothing corroborates that fact. Even if that was half off, she'd still be in the same guideline range, right? Again, this comes back to the fact, Judge Haynes, that the government has to prove. No, I'm well aware, but the point is that if she was a little bit exaggerating, it would, and even quite a bit, twice as much, she would still be in that same range. And she's the one who said a little bit or quite a bit. I mean, a little bit and quite a bit. She admitted that she got drugs from the supplier, no question about it, but a little bit and quite a bit are extremely vague. At that point, it's kind of picking a number out of a hat and saying, well, let's hold her responsible for this. And again, these officers that were in the debrief with her, both of them testified at sentencing. This wasn't some summary testimony at sentencing. They could have said, she said she supplied this much or received this much on this many dates, but there's no evidence of that, so it's the government's burden. The fact that these defendants were sentenced by different judges makes no difference. I don't think the whole point of the sentencing guidelines is to ensure uniformity in sentences, to prevent drastic disparities like happened here. And this idea that the government doesn't know what happened in the other case, I mean, they are the ones that prosecuted the supplier. So I certainly don't know. I don't have access to the PSR. I don't have access to the district court statement of reasons, but the government certainly does. So I assume that if they introduce this evidence of my client's statement at the other sentencing, that they would have told us. And finally, just on the safety valve issue, the inconsistent statement about her amount, the government disclaimed that as disqualifying for safety valve at sentencing. So it really came down to the only thing the judge made a finding on was this continuing to sell. And again, that is pure speculation. So we would ask the court to please vacate my client's sentence and remand free sentencing. Thank you. Okay, thank you, both sides. We appreciate it. And this case is now under